UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

RHONA ELAINE CREECH,               )
                                   )
    Plaintiff,                     )
                                   )
v.                                 )    No. 6:26-cv-30-REW
                                   )
COMMISSIONER OF SOCIAL             )    OPINION & ORDER
SECURITY,                          )
                                   )
    Defendant.                     )

*** *** *** ***

Plaintiff Rhona Creech, through counsel, appeals the denial of her application for a closed period of Social Security Disability Insurance Benefits ("DIB"). *See* DE 1. Creech asks the Court to reverse the Commissioner of Social Security's decision and award her DIB, or, in the alternative, to remand this matter to the Social Security Administration ("SSA") for a new hearing. *See id.* Creech has also filed a motion for summary judgment, asserting that she is entitled to prevail on her claims as a matter of law. *See* DE 9. The Commissioner filed a response on the appeal merits. *See* DE 12. The administrative record appears at DE 6 ("R." Administrative Transcript). Finding that the Commissioner's denial of DIB was in accordance with the law and based on substantial evidence, the Court **DENIES** Creech's requests for relief, *see* DE 1 & 9. The Court affirms the Agency's decision.

## I.    BACKGROUND

Creech alleges that she was been disabled from May 1, 2022 through August 16, 2023[1], and qualifies for a finding of disability and resulting benefits. *See* R. at 169. Following a hearing, Judge Boyce Crocker found that Creech was not "disabled" within the meaning of Social Security

---

[1]At the hearing, counsel modified to a closed period claim, giving that Creech had returned to full-time work. *See* R. at 35.

Act between May 1, 2022, and August 16, 2023, and thus not entitled to DIB. *See id*. at 14-26. Upon reconsideration, her claim was once again denied. *See id.* at 14-26.

Judge Crocker, following the prescribed five-step process, acknowledged that Creech was not engaged in substantial gainful activity, *see id.* at 16, and found that she suffered from severe impairments, including "obesity; degenerative disc disease of the lumbar spine with sciatica; type II diabetes mellitus; osteoarthritis; anxiety; and depression," *see id.* at 16-17. However, he also determined that those impairments did not meet or equal one of the listed impairments contained in Appendix 1 to Subpart P of Part 404. *See id.* at 17. Judge Crocker then found that Creech retained, with stated limits, "the residual functional capacity to perform light work." *See id.* at 19-24. And although Creech was unable to perform any past relevant work, *see id.* at 24, Judge Crocker ultimately concluded that "jobs . . . exist in significant numbers in the national economy that [Creech] can perform," *see id.* at 24–25. As a result, Creech was neither disabled nor entitled to DIB under 20 C.F.R. § 404.1520. *See id.* at 25-26.

In rendering his decision, Judge Crocker assessed and/or relied on medical opinions from a range of professionals, including: William Rigby, Ph.D. (consultative examiner); Michelle Bornstein, Psy.D., and Mary Thompson, Ph.D. (state agency psychological consultants); Michelle Blackburn, MSN, APRN, NP-C (state agency medical consultant); and Daniel Meece, M.D., and Paul McLaughlin, M.D. (state agency medical consultants). *See id.* at 23–24. Judge Crocker considered their medical opinions and based the denial of Creech's application for DIB on portions of their conclusions in light of the full record. *See id.* The claimant testified at her hearing, and Judge Crocker made credibility findings when contrasting Creech's descriptions with the content of the medical and non-medical record. He found "activities of daily living well beyond the claimant's allegation." R. at 22. The contrast was stark. She testified that during the claimed

period that she "didn't do anything" and left her home only for medical appointments. *See, e.g., id*. at 48-50. In fact, she not only attended church multiple times per week, but she also took care of an elderly man in another family's home for a lengthy period. Simply put, the record conveyed to Judge Crocker that Creech was capable of light work, with stated non-exertional limits, in the period at issue.

Following Judge Crocker's decision, Creech requested review by the Appeals Council. *See id.* at 7. The Appeals Council subsequently denied Creech's request. *See id.* at 1–6. Having exhausted administrative remedies, Creech filed the instant Complaint. *See* DE 1. In the Complaint, Creech asks the Court to reverse Judge Crocker's decision and grant her DIB. *See id.* at 2. Alternatively, she asks the Court to remand this matter to the SSA for a new hearing that considers the relevant evidence in full. *See id.* Creech has also filed an inapt motion for summary judgment, essentially arguing these same points. *See generally* DE 9-1.[2] The Commissioner has filed a response in opposition to Creech's Complaint. *See* DE 12. The matter is now ripe for the Court's review and decision.

## II.  LEGAL STANDARD

### A.  ALJ Evaluation

The SSA has established a five-step, sequential inquiry for ALJs to trace when determining whether a claimant is disabled. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4). First, the ALJ considers whether the claimant is engaged in

---

[2] Rule 56 has no place in a case involving review of an administrative record. The governing statute provides the review standard, and a trial is never in play. The Court is limited to reviewing the administrative record. *See Vaught v. Federal Deposit Insurance Corporation,* 2018 WL 5098531 at *6 (Apr. 4, 2018, E.D. Tenn) (quoting *N.C. Fisheries Ass'n, Inc. v. Gutierrez,* 518 F. Supp. 2d 62, 79 (D.D.C. 2007)). The Court must "'determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Id.* (quoting *Sierra Club v. Mainella,* 459 F. Supp. 2d 76, 90 (D.D.C. 2006)). Social security review, under § 405(g), is about the existence vel non of substantial evidence, not a probing for genuinely disputed facts reserved to a factfinder.

substantial gainful activity, defined as work that involves significant physical or mental activities and is usually done for pay or profit. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(i). Second, the ALJ determines whether any of the claimant's impairments are properly classified as severe. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(ii). Third, the ALJ analyzes whether the claimant's impairments, individually or in combination, meet or equal one of the impairments listed in Appendix 1 to Subpart P of Part 404—if they do, then the ALJ will determine that the claimant is disabled. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the ALJ identifies the claimant's residual functional capacity and considers whether she can perform her past relevant work. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(iv). This inquiry focuses on the type of work the claimant previously held, not her exact position. *See Studaway v. Sec'y of Health & Hum. Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, the ALJ determines whether a significant number of jobs exist in the national economy that the claimant can yet perform, given her residual functional capacity. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(v). At this fifth step, the Commissioner bears the burden of production. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(v). If, at any step, the ALJ can conclusively determine that the claimant is or is not disabled, the analysis ends. *See* 20 C.F.R. § 404.1520(a)(4).

In evaluating an application for DIB, ALJs do "not defer or give any specific evidentiary weight" to any particular source's medical opinions or to any single prior administrative medical finding.[3] *Id.* § 404.1520c(a). Rather, ALJs consider and articulate the persuasiveness of each

---

[3] Previously, the SSA distinguished between treating sources, non-treating but examining sources, and non-treating and non-examining sources, providing different default weights to each. *See* 20 C.F.R. § 404.1527(c)(1)–(2). However, claims filed on or after March 27, 2017, are controlled by § 404.1520c rather than § 404.1527, the former of which has done away with these distinctions in favor of the framework discussed above. Creech's claim was filed in 2022. *See* R. at 169.

opinion individually, relying on considerations like supportability, consistency, relationship with the claimant, specialization, and other factors "that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(1)–(5). Of these factors, supportability and consistency are most important—ALJs must "explain how [they] considered the supportability and consistency factors . . . in [their] determination or decision." *Id.* § 404.1520c(b)(2). Supportability depends on the extent to which "the objective medical evidence and supporting explanations presented by a medical source" support a medical opinion, *id.* § 404.1520c(c)(1), while consistency pertains to whether the medical opinion is in line "with the evidence from other medical sources and nonmedical sources," *id.* § 404.1520c(c)(2). ALJs may, but typically need not, articulate how the other factors influenced their decision or determination. *Id.* The sole exception is that when "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record," the ALJ must "articulate how [he] considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in your determination or decision." *Id.* § 404.1520c(b)(3).

### B. Judicial Review

When reviewing an ALJ's decision to deny DIB, a district court may only consider "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). This is a limited inquiry. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)).

An "ALJ's legal rulings, including his interpretation of relevant laws and regulations," are reviewed de novo. *Linden v. Comm'r of Soc. Sec.*, 131 F.4th 531, 534 (6th Cir. 2025) (citing *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018)). However, an ALJ's interpretations of language "contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law . . . are 'entitled to respect,' . . . but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 120 S. Ct. 1655, 1662–63 (2000) (internal citations omitted) (quoting *Skidmore v. Swift & Co.*, 65 S. Ct. 161, 164 (1944)). While social security rulings are "agency rulings published under the authority of the Commissioner of Social Security," and are thus "binding on all components of the [SSA]," they are only persuasive to the Court. *Sullivan v. Zebley*, 110 S. Ct. 885, 891 n.9 (1990) (internal quotation omitted) (citing *Heckler v. Edwards*, 104 S. Ct. 1532, 1534, n.3 (1984)).[4]

In contrast, as to factual assessments, when there is at least "substantial evidence to support [an] ALJ's factual finding, that ruling is conclusive." *Linden*, 131 F.4th at 534 (citing 42 U.S.C. § 405(g)). This is not a high threshold. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1989)); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

---

[4] Notably, *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024), expressly overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 104 S. Ct. 2778, 2781–83 (1984), which required courts to give deference to an agency's reasonable interpretations of ambiguous provisions contained in the statutes that the agency administers. However, the decision did nothing to alter the basic principle of *Skidmore* respect, which applies to an agency's reasonable interpretations of its own policy statements, agency manuals, and enforcement guidelines. *See Loper Bright Enters.*, 144 S. Ct. at 2259 (citing *Skidmore*, 65 S. Ct. at 164).

Given the generous substantial evidence standard, the Court will not try this case de novo, resolve conflicts in the evidence, or revisit questions of credibility. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Nor will the Court reverse the ALJ's determination merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court will affirm if substantial evidence supports the ALJ's decision, if reached under proper standards, even if the Court might have decided the case differently standing in a primary decision. *See Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

### III. ANALYSIS

#### A. Exhaustion

A claimant may obtain judicial review of a decision on her application for DIB by filing "a civil action . . . within [60] days after the mailing to h[er] of notice of such decision . . . in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). However, the claimant must first exhaust her administrative remedies by applying for an initial determination, seeking reconsideration, requesting a hearing before an ALJ, and asking for Appeals Council review. *See* 20 C.F.R. § 404.900(a)(1)–(5). Creech filed a timely action in the Eastern District of Kentucky, the judicial district in which she resides. Additionally, she has exhausted her administrative remedies by applying for an initial determination, seeking reconsideration, requesting a hearing before an ALJ, and asking for Appeals Council review. Having satisfied the procedural prerequisites to judicial review, and with no exhaustion issue raised by SSA, the Court proceeds to the merits of Creech's appeal—specifically, to whether Judge Crocker's conclusion that Creech was not "disabled" within the meaning of Social Security Act

7

between May 1, 2022, and August 16, 2023, complied with relevant law and was based on substantial evidence.

### B.  Consideration of Medical Evidence

Judge Crocker determined that Creech was not disabled, finding that she possessed the age, education, work experience, and residual functional capacity necessary to perform a significant number of light-duty jobs in the national economy (e.g., routing clerk, office helper, circuit board inspectors, final assembler).  *See* R. at 24–25.  Creech challenges this conclusion, arguing in her motion that Judge Crocker's decision is not supported by the record.  *See* DE 9-1 at 6.

The thrust of Creech's appeal is that Judge Crocker "completely disregarded [Creech's] physical and psychological impairments in this claim and their effect on her from May 1, 2022 to August 16, 2023 when she returned to work."  *See id*. at 7.  Specifically, Creech contends that Judge Crocker overlooked her back problems and improperly disregarded APRN Blackburn's finding that Creech was impaired as to bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, and pushing and pulling heavy objects.  *See id*. at 8-9.  Creech further asserts that Judge Crocker failed to adequately address and assess Dr. Rigby's finding that she had "marked limitations in her ability to maintain social interactions with supervisors, friends and the public and marked impairments in adapting and responding to the pressures of normal day to day work activities." *See id.* at 9-10.  Here, the Court's review is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards, including consideration of the proper factors.  *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745–46 (6th Cir. 2007) (citing 42 U.S.C. § 405(g); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984)).

8

### 1.    Physical Limitations and Nurse Blackburn's Opinion

At the outset, the Court notes that Creech's physical issues are mostly background in the case.  At the hearing, counsel and Creech attributed her inability to work, commencing in May of 2022, primarily to psychological conditions.  R. at 36; 45; 47.  Thus, and although the physical issues are part of the claim and record, the case really turns on mental health claims and the closed period.

Judge Crocker properly considered all evidence of Creech's physical condition and limitations, including Nurse Blackburn's medical opinion.  Because Creech filed her DIB claim in 2022, the newer rules for evaluating medical opinions apply.  *See* 20 C.F.R. § 404.1520c.  This regulation contains an analysis requirement, *see* § 404.1520c(a), and an articulation requirement, *see* § 404.1520c(b).  For the analysis portion, medical opinions and prior administrative medical findings are not given de jure deference or any specific evidentiary weight.  *See id.* at § 404.1520c(a).  Instead, the ALJ must consider certain factors listed in 20 C.F.R. § 404.1520c(c)(1)-(5) in weighing the persuasiveness of a medical opinion, with supportability ((c)(1)) and consistency ((c)(2)) being the most important.  *See id.*; *see also Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *5 (6th Cir. June 12, 2024).  Regarding articulation, the ALJ must explain how he considered the supportability and consistency factors in determining opinion persuasiveness and may explain his consideration of the other factors, if appropriate.  *See* 20 C.F.R. § 404.1520c(b)(2).  The supportability factor concerns the relevance of the objective medical evidence and supporting explanations presented by a medical source to support the medical source's medical opinion—the more relevant the evidence or explanation, the more persuasive the opinion or prior administrative medical finding.  *See id.* at § 404.1520c(c)(1).  The consistency factor provides that the more consistent a medical opinion is with evidence from other medical

sources and nonmedical sources in the claim, the more persuasive the opinion or prior administrative medical finding will be. *See id.* at § 404.1520c(c)(2).

Judge Crocker reasonably determined that Nurse Blackburn's opinion was only partially persuasive based on deficiencies in both supportability and consistency. Though the Sixth Circuit has not established a specific standard to determine whether an ALJ sufficiently complied with the articulation and analysis requirement, district courts within this circuit "consistently apply the articulation requirement literally." *See Peters v. O'Malley*, No. 6:24-CV-11-REW, 2024 WL 5077599, at *3 (E.D. Ky. Dec. 10, 2024). Under this approach, the ALJ must "provide a coherent explanation of their reasoning, clearly explain their consideration of the opinion and identify the evidence supporting their conclusions, and otherwise explain how they considered the supportability and consistency factors." *See id.* (citing *Oliver v. Kijakazi*, No. 3:22-CV-28-DCP, 2023 WL 2587487, at *4 (E.D. Tenn. Mar. 21, 2023)). Here, Judge Crocker first noted that Nurse Blackburn's proffered opinion, which suggested that Creech had an impaired ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, and traveling, as well as pushing and pulling heavy objects, was "extremely vague as to the nature and extent of the claimant's limitations, and is therefore of limited value in evaluating [Creech's] residual functional capacity." *See* R. at 24. However, he also found portions of Nurse Blackburn's opinion persuasive, explaining that her assessment as to limitations in bending, stooping, lifting, crawling, squatting, carrying, and pushing or pulling was consistent with the objective records indicating that Creech showed "crepitus of the knees and lumbar pain with range of motion or lying flat." *See id.* at 24, 858. Judge Crocker also explicitly addressed Creech's back problems, noting that the limitations Nurse Blackburn assessed in these areas was consistent with Creech's "history of multiple back surgeries." *See id*. at 24.

10

Judge Crocker also considered Creech's representations and medical records in assessing her physical limitations. Judge Crocker acknowledged that Creech had undergone 2 lumbar discectomies in 2009, a lumbar fusion in 2013, implantation of a spinal cord stimulator in 2016, and removal of the spinal cord stimulator in 2018. *See id*. at 20. Judge Crocker recounted Creech's representations, including her statements that her physical issues did not prohibit her from continuing to work (with brief breaks), that she could not do any significant lifting or physical work since the surgeries, and that she has difficulty sitting, standing, or walking for extended periods of time. *See id*. Furthermore, Judge Crocker addressed the medical notes attendant to her 2022 and 2023 office visits. During a visit to her primary care physician in June 2022, Creech reported lower back pain. *See id*. at 20, 391. Creech later characterized her back pain as moderate and stable at visits in September and December 2022. *See id*. at 20. Judge Crocker also reviewed Nurse Blackburn's physical examination of Creech in detail, noting:

> At a consultative examination in January 2023, the claimant reported pain in her low back since 2006, with radiation into the left leg and foot, described as numbness, tingling, and weakness (Ex. 14F). She reported exacerbation with activity and improvement with medication and rest. She additionally reported pain in her left hip, left knee, left ankle and left foot. She reported diabetes, but reported control over her blood sugars. On examination, she displayed a normal gait. She was stable at station and comfortable in the sitting position but uncomfortable in the supine position secondary to back pain. Her upper extremity strength and dexterity was normal. She displayed some crepitus of the bilateral knees, but no tenderness. Her lumbar spine elicited pain with range of motion and lying flat, but no tenderness, and straight leg raise testing was normal. She had hip pain with range of motion testing. Her muscle strength was normal in all extremities, as was sensation. She was able to walk on heels and toes and performed tandem gait without difficulty. She could squat halfway down before reporting back pain. Records from 2013 show continued stable, moderate back pain (Ex. 20F/3).

*See id*. at 20-21. Based upon his review of Nurse Blackburn's opinion, Creech's representations, and his assessment of the medical records, Judge Crocker determined that Creech's physical impairments, including her back surgeries, support limitation to a range of light work given that

"there is no evidence that her symptoms or limitations during the alleged period of disability were any more severe than during prior and subsequent periods of employment." *See id.* at 20.

Creech is plainly incorrect in alleging that Judge Crocker "completely disregard[ed]" her physical impairments and improperly diminished Nurse Blackburn's opinion. *See* DE 9-1 at 8, 10-11. Judge Crocker thoroughly discussed Creech's physical impairments, identified unsupported conclusions, and adequately explained the persuasiveness of Nurse Blackburn's opinion. That satisfies his duties and, in turn, satisfies the Court's limited standard of review. *See, e.g., Sallaz*, 2024 WL 2955645, at *5–7 (affirming an ALJ's decision not to credit a medical opinion because of the opinion's inconsistencies with the overall record and a basic factual finding that the opinion was not credible); *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850–51 (6th Cir. 2020) (affirming an ALJ's decision to discount a treating physician's opinion because the petitioner's "medical records show that he responded positively to medical intervention, [and] that his physical exams were mostly normal"). At minimum, the Court sees substantial evidence in support of Judge Crocker's conclusion. And, as a practical matter, the ALJ effectively hewed to Blackburn's non-specific exertional limitations. Contrary to the opinions of Drs. Meece and McLaughlin, Judge Crocker reduced the RFC to light work, on stated terms. Creech does not articulate how Blackburn's general finding that Creech's work ability was "impaired" should have figured differently into the RFC.

Judge Crocker's analysis properly reflects the regulatory methodology contemplated by § 404.1520c. He did not defer to any opinion by nature of its source, instead evaluating each medical opinion for supportability and consistency and resolving conflicts based on the whole evidentiary record. *See* R. at 14-26. His rational determination as to Creech's residual functional

capacity was grounded in substantial evidence and accompanied by a sufficiently articulated explanation. That alone satisfies the minimal governing standard.

### 2.    Mental Limitations and Dr. William Rigby's Opinion

Similarly, Judge Crocker properly considered all evidence bearing on Creech's mental health, including Dr. Rigby's medical opinion. The opinion of Dr. Rigby, who performed a consultative exam, is not entitled to any special weight in light of § 404.1520c. His opinion must be evaluated for its persuasiveness based on a range of factors, chief among them being supportability and consistency, both of which must have been, and here were, articulated by the ALJ. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Sallaz*, 2024 WL 2955645, at *5.

Judge Crocker satisfied these requirements and reasonably concluded that Dr. Rigby's opinion was not persuasive. Judge Crocker first noted that Dr. Rigby's proffered opinion, which suggested that Creech had "marked impairment in maintaining social interactions with supervisors, friends, and the public, and marked impairment in adapting and responding to the pressure of normal day-to-day work activity," *see* R. at 23, was not supported by his notes, which themselves indicated full cooperation, depressed mood, and low energy, but normal cognitive functioning and the ability to drive independently to the examination, *see id.* at 701-02. He further explained that Dr. Rigby's assessment as to the social limitation was inconsistent with Creech's reported activities of "including attending church twice weekly and no problems with bathing, getting dressed, or cooking dinner[.]" *See id*. at 23, 706. Moreover, Judge Crocker observed that the social and adaptive limitation determinations from Rigby were incompatible with Creech's treatment record, which indicated stable functioning and frequent social activities "such as sitting with an elderly person and traveling." *See* R. at 23, 603, 692, 702, 721, 730, 1025, 1039.

13

Collectively, these facts rendered Dr. Rigby's opinion not persuasive. [5] *See id.* The ALJ's views were reasonable and procedurally sound.

Indeed, the Court notes that Rigby misperceived Creech's departure from employment by a full year. She showed active employment up until May of 2022, and Rigby evidently did not know of or heedlessly disregarded her last employment period. Additionally, Rigby discounted (but the ALJ did not discount) Creech's attendance at multiple church services per week. Creech evidently did not tell Rigby that, at the very same time he was seeing her, Creech was serving as a caretaker for an elderly man. That position, paid or not, seemingly was long term and directly contravenes the idea that Creech could not leave home or interact with others in a work-type situation. Several records over the course confirm her involvement in that caregiving role. R. at 692 (10/22, sitting with elderly person), 730 (11/22, referencing home she works in with "little old man"), 1039 (7/23, referencing interim passage of "older gentleman that pt provided in home care for"). Critically, she did not reference this in her testimony, where Creech depicted herself as essentially functionless and homebound for the entirety of May of 2022 through August of 2023. The ALJ, accounting for the full record and its impact on the medical proof, plausibly viewed Rigby's restrictions as unwarranted.

---

[5] Rigby's "marked" limitation findings on social interaction well exceeded what Crocker found. Crocker, who cited to or referenced nearly every mental health interaction through the closed period, noted the lack of any significant changes from the pre- to post-period surrounding the claimed disability term. Crocker found only moderate interaction and mild adaptive limitations apt. This translated, in the RFC, to "occasional interactions with public, supervisors, and coworkers." R. at 18-19. The terms are largely ones of art. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(F)(2)(d) (a "marked limitation" is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis); *id*. at § 12.00(F)(2)(c) (a "moderate" limitation means that the individual's ability to function independently, appropriately, effectively, and on a sustained basis is fair); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996) ("'[o]ccasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday"). Given that Crocker knew Creech could attend church multiple times per week, had sharply overstated her limitations at home (e.g., claiming regular need for help even with personal grooming and inability to assist with tasks like pet care, both contentions flatly contradicted in other parts of the record), and had worked as a caregiver in the heart of the closed period, his determination that she could occasionally interact with others in a work setting was quite plausible.

14

Instead of relying on Dr. Rigby's conclusions, Judge Crocker relied on Dr. Bornstein's and Dr. Thompson's independent but consistent opinions, believing them to be "partially persuasive." *See id.* In rating the four "paragraph B" criteria, the doctors determined that Creech was moderately limited in her ability to adapt or manage herself, she had mild limitations understanding/remembering/applying information, interacting with others, and concentrating/persisting/maintaining pace. *See id.* at 60, 70. Judge Crocker noted that this finding contrasted with their ultimate opinions that Creech was able to understand and remember simple instructions, sustain attention, concentration, effort, and pace for simple tasks, interact occasionally as needed with supervisors, peers, and the public, and adapt adequately to situational conditions and changes in a routine work setting. *See id.* at 23, 63-65, 74-75. Judge Crocker concluded these opinions were persuasive in that their limitation to simple work and occasional interaction was consistent with Creech's medical records evincing mental health treatment throughout the relevant period. *See id.* at 23. The state providers had failed to consider or reflect records addressing mental health, but Judge Crocker squared the review and product with those records. Quite importantly, Creech does not challenge the Thompson and Bornstein opinions in the appeal. Those opinions, as parsed and sorted by Crocker, validate the RFC.

Judge Crocker's statements rationally indicate that Dr. Rigby's opinion lacked supportability and consistency. Although succinct, his analysis addressed the pertinent factors and was based on substantial evidence; at bare minimum, it included more than the sort of boilerplate references to supportability and consistency that typically result in remand. *See Zirker v. Comm'r of Soc. Sec.*, No. 21-CV-12440, 2023 WL 2301998, at *3 (E.D. Mich. Mar. 1, 2023) (collecting cases). This is not de novo review, and Judge Crocker's rational processing passes the threshold. Accordingly, Judge Crocker's treatment of Dr. Rigby's opinion was not in error; rather, it reflected

15

a reasoned evaluation consistent with both the record and the law. *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ surely must make credibility determinations. He made those from the hearing record and Creech's testimony. That testimony dramatically overstated Creech's limitations, a problem that tainted the Rigby opinion as well (given the missing information, from the Rigby basis, early stated). A reasonable mind can accept that Rigby's views are unsupported by what he observed (the church frequency, e.g., and the incomplete information on job history) and also are inconsistent with the full record (i.e., the treatment records indicative of longitudinal stability and the social record of Creech being fully independent on ADLs and even being able, at the same time as the assessment, to care for an elderly person in another family's home). There is no error in Judge Crocker's product.

### C. Denial of Summary Judgment

Creech labelled her appellate brief a motion for summary judgment. This case involves an administrative appeal under standards governed by statutory law and cabined by an extant administrative record. Rule 56 concepts have no place, because no trial would ever ensue in a case of this type Therefore, Creech's motion for summary judgment is denied. Indeed, in this administrative appeal, applying the correct review standard, the Court affirms the Agency's determination on the merits.

### IV. CONCLUSION

For the above-stated reasons, the Court **DENIES** Plaintiff's appeal, *see* DE 1, and denies Plaintiff's motion for summary judgment, *see* DE 9. The Court **AFFIRMS** the SSA's decision, pursuant to 42 U.S.C. § 405(g), and **DIRECTS** the Clerk to strike this matter from the Court's active docket.

This the 21st day of July, 2026.

Signed By:

*Robert E. Wier*

**United States District Judge**